1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>KARISSA ANN COURTWAY,<br><br>                                    Defendant. | Case No.:  18-cr-4687-DMS-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE (INDICATIVE RULING)** |

Pending before the Court is Defendant Karissa Ann Courtway's ("Courtway" or "Defendant") motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 73.)  The United States filed a response in opposition, and Defendant filed a reply.  On November 7, 2023, Defendant filed a notice of supplemental authority in light of recent case law and newly adopted amendments to the United States Sentencing Guidelines.  For the reasons explained below, the Court **INDICATES** that it would **GRANT** Defendant's motion to reduce sentence if the Ninth Circuit remanded to this Court for such purpose.

## I.      BACKGROUND

### A. Present Conviction

On October 4, 2018, Courtway along with co-defendant Jaime Bautista Marquez ("Marquez") attempted to enter the United States at the Andrade Port of Entry in Imperial County, California.   Customs  and  Border  Protection  ("CBP")  officers  found  45.16

kilograms of methamphetamine, 5.2 kilograms of cocaine, and 703 grams of heroin in their car. Defendant was charged with three counts of importing methamphetamine, cocaine, and heroin, respectively, in violation of 21 U.S.C. §§ 952, 960. (Information, ECF No. 12.) On February 7, 2019, Defendant pled guilty to all three counts pursuant to a plea agreement. (Minute Entry, ECF No. 30; Plea Agreement, ECF No. 33.)

At the sentencing hearing on July 25, 2019, the Court reluctantly found Defendant ineligible for safety-valve relief under 18 U.S.C. § 3553(f), as modified by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The statute provides, in relevant part:

> Notwithstanding any other provision of law, in the case of an offense under . . . section 1010 or 1013 of the Controlled Substances Import and Export Act [21 U.S.C. §§ 960, 963] . . . , the court shall impose a sentence pursuant to [the United States Sentencing Guidelines] . . . without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—
> > (1) the defendant does not have—
> > > (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
> > > (B) a prior 3-point offense, as determined under the sentencing guidelines; *and*
> > > (C) a prior 2-point violent offense, as determined under the sentencing guidelines; . . . .

18 U.S.C. § 3553(f) (emphasis added). At sentencing, counsel for Defendant conceded that Defendant was subject to "a straight ten-year" and was not eligible for safety-valve relief. (*See* Tr. of Sentencing Hr'g, Def.'s Mot., Ex. A, ECF No. 73-1, at 4.) The Court agreed with both Parties and operated under the understanding that the statute meant Defendant would be eligible for safety-valve relief only if there was an *absence* of all three criminal history factors (A)–(C). Thus, the Court found Defendant ineligible, because it was uncontested that the Defendant had a prior 3-point offense. *See* 18 U.S.C. § 3553(f)(1)(B). The Court sentenced Defendant to the mandatory minimum sentence of 120 months. (Judgment, ECF No. 56.)

/ / /

**B. Criminal History**

In 2010, Defendant was convicted in Washington State of felony conspiracy to possess methamphetamine with the intent to deliver and was sentenced to 40 days in jail. This was a 1-point offense. Then in 2012, also in Washington State, Defendant was convicted of felony possession of methamphetamine and was sentenced to 10 days in custody. This was also a 1-point offense. In 2014, Defendant was convicted in Oregon of a third felony—unlawfully delivering methamphetamine. She was initially sentenced to three years of probation; but after she violated the terms of her probation, she was sentenced to 23 months in custody followed by a term of supervised release. This was a 3-point offense. On September 6, 2018, about one month before she was charged with the instant offense, Defendant absconded from supervision and a warrant was issued. Because Defendant committed the instant offense while still on supervised release, 2 points were added to her criminal history score consistent with the guidelines in effect at the time of sentencing. *See* U.S.S.G. § 4A1.1(d) (2018) (amended 2023). In total, Defendant had 7 criminal history points and was in criminal history category IV at the time of her sentencing. (Tr. of Sentencing Hr'g, ECF No. 73-1, at 9.)

## II. POST-SENTENCING PROCEDURAL HISTORY

On September 5, 2019, Defendant filed an appeal (ECF No. 57) challenging this Court's interpretation of the safety-valve statute and denial of safety-valve relief. *See* Joint Motion to Stay Appellate Proceedings at 2, *United States v. Courtway*, No. 19-50288 (9th Cir. Jan. 27, 2020), ECF No. 7. At the Parties' joint request, the Ninth Circuit stayed appellate proceedings pending resolution of two cases raising similar challenges, *United States v. Diaz*, No. 19-50298, and *United States v. Lopez*, No. 19-50305. Clerk's Order, *Courtway*, No. 19-50288 (9th Cir. Feb. 14, 2020), ECF No. 8.

On May 21, 2021, the Ninth Circuit held in *United States v. Lopez* that a defendant is eligible for safety-valve relief unless the defendant has *all* of the following: (A) more than 4 criminal history points excluding 1-point offenses, (B) a prior 3-point offense, and

/ / /

3

(C) a prior 2-point violent offense.  998 F.3d 431, 437 (9th Cir. 2021).[1]  The United States filed a petition for rehearing en banc on August 5, 2021.  Petition for Rehearing En Banc, *Lopez*, No. 19-50305 (9th Cir. Aug. 5, 2021), ECF No. 49.  On April 21, 2022, the Ninth Circuit vacated submission in *Diaz* and stayed appellate proceedings pending the issuance of the mandate in *Lopez*.  Order, *Diaz*, No. 19-50298 (9th Cir. Apr. 21, 2022), ECF No. 44.  On January 27, 2023, the Ninth Circuit denied en banc review in *Lopez*, *United States v. Lopez*, 58 F.4th 1108 (9th Cir. 2023).

On February 14, 2023, the Ninth Circuit granted the United States' unopposed motion to stay the mandate in *Lopez* for 90 days to seek certiorari from the Supreme Court.  Order, *Lopez*, No. 19-50305 (9th Cir. Feb. 14, 2023), ECF No. 64.  On March 3, 2023, the Ninth Circuit granted the United States' unopposed motion to further stay appellate proceedings in *Courtway* pending the Supreme Court's resolution of *Pulsifer v. United States*, No. 22-340 (U.S.), a case from the Eighth Circuit raising the same issue as *Lopez* regarding the proper interpretation of the safety-valve statute.  Clerk's Order, *Courtway*, No. 19-50288 (9th Cir. Mar. 3, 2023), ECF No. 27.

On June 5, 2023, this Court appointed counsel for the purpose of Defendant's motion to reduce sentence and set a briefing schedule on the motion.  (ECF No. 72.)  On July 13, 2023, Defendant filed her motion to reduce sentence.  (Def.'s Mot. to Reduce Sentence ("Def.'s Mot."), ECF No. 73.)  The United States filed its opposition on July 28, 2023.  (United States' Opp'n ("Opp'n"), ECF No. 76.)  Defendant filed a reply on August 11, 2023.  (Def.'s Reply, ECF No. 77.)

The Supreme Court heard oral argument in *Pulsifer* on October 2, 2023.  On October

---

[1] There is a split among the circuit courts on this issue.  The Fourth and Eleventh Circuits are in accord with the Ninth's Circuit's decision in *Lopez*.  *See United States v. Jones*, 60 F.4th 230 (4th Cir. 2023); *United States v. Garcon*, 54 F.4th 1274 (11th Cir. 2022) (en banc).  But the Fifth, Sixth, Seventh, and Eighth Circuits have held that a defendant is eligible for safety-valve relief under § 3553(f)(1) only if he does not have (A), (B), *or* (C).  *See United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022); *United States v. Haynes*, 55 F.4th 1075 (6th Cir. 2022); *United States v. Pace*, 48 F.4th 741 (7th Cir. 2022); *United States v. Pulsifer*, 39 F.4th 1018 (8th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023).

4

25, 2023, the Ninth Circuit issued its mandate in *Lopez*. *See* Mandate, *Lopez*, No. 19-50305 (9th Cir. Oct. 25, 2023), ECF No. 65. Accordingly, *Lopez* is final and binding on this Court pending the Supreme Court's decision in *Pulsifer*.

On November 7, 2023, Defendant filed a notice of supplemental authority addressing recent case law and newly enacted amendments to the United States Sentencing Guidelines. (Notice of Suppl. Authority, ECF No. 80.)

### III.   LEGAL STANDARD

In general, a court may not modify a sentence of incarceration once it has been imposed, unless expressly permitted by Rule 35 of the Federal Rules of Criminal Procedure or by statute. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). The First Step Act of 2018 ("FSA") is such a statute. Pub L. 115-391, 132 Stat. 5194. Defendant moves to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Sometimes known as "compassionate release," under this provision of the FSA, a district court may exercise its discretion to reduce a sentence if it finds that there are "extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). Specifically, Section 3582(c)(1)(A) provides:

> [T]he court, upon . . . motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) . . . , if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . ; and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are three analytical questions before the Court: (1) whether Defendant has satisfied the administrative exhaustion requirement; (2) whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction consistent with applicable Sentencing Commission policy statements; and (3) whether the section 3553(a) factors support a sentence reduction. The court may not grant relief unless it

answers all three questions in the affirmative.

## IV.   DISCUSSION

As a threshold matter, Court finds that it lacks jurisdiction to grant Defendant's motion while Defendant's appeal remains pending.  However, for the reasons stated below, the Court rejects the United States' request to defer ruling and proceeds to address the merits of Defendant's motion in an indicative ruling.  The Court indicates that it will grant Defendant's motion to reduce sentence if the Ninth Circuit remands to this Court for the purpose of considering Defendant's motion.

### A. Jurisdiction

The Court lacks jurisdiction to grant Defendant's motion while Defendant's appeal remains pending.  "The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  This rule applies with equal force in criminal cases, and the district court does not regain jurisdiction until the court of appeals issues a mandate. *United States v. Cote*, 51 F.3d 178, 182 (9th Cir. 1995).  Defendant filed a notice of appeal on September 5, 2019, and the appeal has been pending before the Ninth Circuit since then.  Accordingly, as both parties agree, this Court lacks jurisdiction to grant Defendant's motion.

However, Federal Rule of Criminal Procedure 37(a) allows a court to exercise its discretion to address the merits of a motion even if the court lacks jurisdiction to grant the motion.  "[I]f a timely motion is made for relief that the [district] court lacks authority to grant because of an appeal that has been docketed and is pending," Rule 37(a) gives the court three options: the court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).  Thus, the Court must first decide whether to defer ruling on the motion or to address the merits.  If the Court proceeds to the merits, it may deny the motion outright, or it may issue an indicative ruling stating that it would grant the motion or that the motion raises a substantial

issue.  If a court issues an indicative ruling under Rule 37(a), the movant must promptly notify the court of the appeals which may then remand to allow the district court to consider the motion.  *See* Fed. R. App. P. 12.1(a).

### B. Request to Defer

The United States asks this Court to defer ruling on Defendant's motion.  The United States argues that it would be "most sensible" for the Court to defer ruling on Defendant's motion until the Supreme Court provides a conclusive construction of the safety-valve statute in the *Pulsifer* case, which is pending before the Supreme Court this term (October Term 2023).  (Opp'n at 6.)  Defendant argues that this Court should proceed to the merits of Defendant's motion for sentence reduction because Defendant's appeal has now been pending for over four years since she first filed it in 2019.  Although the Supreme Court is likely to decide *Pulsifer* by June 2024, the Court will exercise its discretion to address the merits.

The United States argues that the Court should defer consideration of Defendant's motion because Defendant's primary argument is that this Court incorrectly interpreted the safety-valve statute, which is "precisely the same issue that is currently before the Ninth Circuit on appeal."  (Opp'n at 5.)  However, the grounds Defendant raises in her compassionate release motion, although related to the issue pending on appeal, are distinct. In her appeal, Defendant challenges the legality of her sentence and argues that this Court wrongly denied safety-valve relief.  Defendant does not challenge the legality of her sentence in this compassionate release motion.  Defendant accepts (and this Court assumes) for the purposes of this motion that her original sentence was lawfully imposed.  Rather, Defendant argues that the sentencing disparity resulting from the Ninth Circuit's decision in *Lopez* has made it such that her sentence is no longer equitable.  (*See* Def.'s Reply at 1, "the . . . reasons Ms. Courtway presented for reducing her sentence, including the *disparity between her 120-month sentence and the sentence she would have received today*" (emphasis added).)

Citing statistics from the United States Sentencing Commission, Defendant notes

that the average sentence a similarly situated defendant in the Southern District of California received in Fiscal Year 2022 was 45 months; and the median sentence was 40 months. By contrast, Defendant received a sentence of 120 months. This post-*Lopez* sentencing disparity would persist regardless of the Supreme Court's ultimate disposition in *Pulsifer*. Thus, Defendant's sentencing disparity argument here is distinct from the issue pending in Defendant's appeal and in *Pulsifer*—whether the "and" in the safety-valve statute, 18 U.S.C. § 3553(f), is conjunctive or disjunctive. She may properly raise such an argument in a compassionate release motion. *See United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023) (defendant properly argued that intervening decisional law "creating a sentencing disparity among similarly situated defendants" was an extraordinary and compelling reason warranting sentence reduction because such an argument sought to "invoke the sentencing judge's discretion to reduce his sentence" rather than "to correct sentencing errors"). The Court therefore rejects the United States' argument that Defendant's sentencing disparity argument here is "precisely the same issue" as the issue pending in Defendant's appeal.

Deferring on Defendant's motion would increase the chance that Defendant serves a long custodial sentence that is no longer equitable. The Court therefore rejects the United States' invitation to defer. *Cf. United States v. Arce-Flores*, No. CR15-0386JLR, 2017 WL 4586326, at *5 (W.D. Wash. Oct. 16, 2017) (concluding that although the court lacked jurisdiction to grant defendant's motion for writ of coram nobis while an appeal was pending, "the best course of action" was to proceed to the merits of the motion rather than to defer because defendant's removal proceedings were pending). Accordingly, the Court will proceed to the merits of Defendant's motion and invite the Ninth Circuit to determine whether this Court may grant Defendant's motion.

**C. Merits**

Defendant has met her burden of showing she is entitled to a sentence reduction. For the reasons explained below, the Court finds that Defendant has satisfied the exhaustion requirement, has demonstrated extraordinary and compelling reasons consistent with the

applicable Sentencing Commission policy statement, and that the Section 3553(a) factors support a sentence reduction.

### 1. Exhaustion

Defendant has satisfied the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A).

> [A] court may not consider a motion brought under § 3582(c)(1)(A) unless (1) the Director of the BOP has filed the motion on the inmate's behalf, or (2) the inmate has requested that the BOP make such a motion and either (a) the inmate has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf," or (b) 30 days have elapsed since the "warden of the [inmate]'s facility" received a compassionate-release request from the inmate.

*United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (per curiam) (quoting 18 U.S.C. § 3582(c)(1)(A)) (alterations within quotes in original).

On May 23, 2023, Defendant submitted a request to the Warden of the Federal Correctional Institute Waseca ("FCI Waseca"), where Defendant is currently housed, requesting compassionate release based on the grounds raised in the instant motion. (*See* Letter to Warden, Def.'s Mot., Ex. H, ECF No. 73-1.) More than 30 days have elapsed between the date of Defendant's request (May 23, 2023) and the date Defendant filed the instant compassionate release motion (July 13, 2023). Further, the United States makes no argument that Defendant failed to satisfy the exhaustion requirement. *See Keller*, 2 F.4th at 1282 (the exhaustion requirement is a "mandatory claim-processing rule" not a "jurisdictional bar," and a court is not required to enforce the rule unless "properly raised by the government"). The Court therefore proceeds to the merits of Defendant's motion.

### 2. Extraordinary and Compelling Reasons Consistent with Applicable Sentencing Commission Policy Statements

Considering the disparately long sentence Defendant received in 2019 prior to the Ninth Circuit's 2021 decision in *Lopez* along with her significant rehabilitation in prison, the Court finds that Defendant has demonstrated extraordinary and compelling reasons sufficient to warrant a sentence reduction.

The Court may grant a motion to reduce sentence pursuant to § 3582(c)(1)(A) only

9

upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress provided no statutory definition of "extraordinary and compelling reasons." Instead, Congress stated that the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Ninth Circuit has held that there was no applicable policy statement in effect for defendant-initiated motions to reduce sentence because prior to November 1, 2023, U.S.S.G. § 1B1.13 referred only to motions filed by the Bureau of Prisons Director. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) ("We . . . hold that the [then] current version of U.S.S.G. § 1B1.13 is not an applicable policy statement for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant.") (internal quotes omitted). In the absence of an applicable policy statement, the Ninth Circuit held that district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Aruda*, 993 F.3d at 801 (quoting *United States v. McCoy*, 981 F.3d 271, 281–84 (4th Cir. 2020)) (omission in original). The only statutory exception is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

However, on November 1, 2023, an applicable Sentencing Commission policy statement came into effect. The Sentencing Commission amended Section 1B1.13 and it now explicitly governs motions filed by both individual defendants and the Director of the Bureau of Prisons. Section 1B1.13 provides:

> Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a),

10

> to the extent that they are applicable, the court determines that . . . [e]xtraordinary and compelling reasons warrant the reduction . . . .

U.S.S.G. § 1B1.13(a)(1)(A) (emphasis added).  The Guideline provides that a court may find extraordinary and compelling reasons exist due to the following factors, alone or in combination with other factors: (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) the defendant being a victim of abuse while in custody, (5) other reasons a court finds to be "similar in gravity to" Paragraphs (1)–(4), or (6) an unusually long and disparate sentence.  *Id.* § 1B1.13(b).[2]

---

[2] Section 1B1.13(b) provides, in full:

**(b) Extraordinary and Compelling Reasons**.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

    **(1) Medical Circumstances of the Defendant**.—

        **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        **(B)** The defendant is--

            **(i)** suffering from a serious physical or medical condition,

            **(ii)** suffering from a serious functional or cognitive impairment, or

            **(iii)** experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

        **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

        **(D)** The defendant presents the following circumstances--

            **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

            **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

            **(iii)** such risk cannot be adequately mitigated in a timely manner.

Thus, as of November 1, 2023, the amended version of U.S.S.G. § 1B1.13(a)(1)(A) is an applicable policy statement that applies to defendant-initiated compassionate release motions. *See Aruda*, 993 F.3d at 802.

---

**(2) Age of the Defendant**.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(3) Family Circumstances of the Defendant**.—

    **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

    **(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

    **(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

**(4) Victim of Abuse**.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

    **(A)** sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim); or

    **(B)** physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

**(5) Other Reasons**.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

**(6) Unusually Long Sentence**.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Although an applicable policy statement is now in effect and any sentence reduction must be consistent with it, the Court nonetheless retains substantial discretion to determine what constitutes "extraordinary and compelling reasons" under Paragraph 5 of Section 1B1.13(b). *See* U.S.S.G. § 1B1.13(b)(5) (a court may conclude that "any . . . circumstance or combination of circumstances that, when considered by themselves or together . . . are similar in gravity to those described in paragraphs (1) through (4)" constitutes extraordinary and compelling reasons). Defendant contends four extraordinary and compelling reasons exist and warrant relief: (1) the disparately long sentence she received compared to what she would have received if sentenced after *Lopez*; (2) her significant rehabilitation; (3) the unusually harsh conditions of confinement she endured as a result of the COVID-19 pandemic; and (4) the unusually harsh conditions of confinement due to the failing conditions at FCI Waseca and FCI SeaTac. These arguments are addressed below.

### a. Sentencing Disparity

Defendant argues that if she were sentenced today, she would be safety-valve eligible, and the 120-month mandatory minimum sentence would not have been imposed. As a result, she argues the sentence she received is unusually long. The Court first concludes that it may properly consider post-*Lopez* sentencing disparities in analyzing Defendant's extraordinary and compelling reasons. The Court then concludes that in combination with other factors discussed below, Defendant's disparately long sentence post-*Lopez* is an extraordinary and compelling reason warranting sentence reduction.

#### i. Whether the Court May Consider Post-*Lopez* Sentencing Disparities in a Motion to Reduce Sentence

"Congress has only placed two limitations directly on extraordinary and compelling reasons: the requirement that district courts are bound by the Sentencing Commission's policy statement . . . and the requirement that 'rehabilitation alone' is not extraordinary and compelling." *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *see* 18 U.S.C. § 3582(c)(1)(A) (Sentencing Commission policy statement requirement); 28 U.S.C. § 994(t) (rehabilitation alone is not sufficient). Under the applicable Sentencing Commission

13

policy statement, a district court has substantial discretion to determine what constitutes extraordinary and compelling reasons: "any circumstance or combination of circumstances" a court finds to be "similar in gravity" to those listed in U.S.S.G. § 1B1.13(b)(1)–(4) may constitute extraordinary and compelling reasons.   U.S.S.G. § 1B1.13(b)(5).

The Government argues Defendant may not seek compassionate release on the ground that post-*Lopez* sentencing disparities constitute an extraordinary and compelling reason because compassionate release is "not the appropriate vehicle to rectify a purported misapplication of sentencing laws."  (Opp'n at 6.)  Such grounds, the United States argues, would be appropriate to raise in a motion brought under 18 U.S.C. § 2255 rather than a compassionate release motion.  The Court disagrees and finds that Ninth Circuit and Supreme Court precedent foreclose this argument.

In 2022, the Supreme Court held in *Concepcion v. United States* that district courts may "consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act."  597 U.S. 481, 500 (2022).  Although *Concepcion* involved a motion brought under Section 404(b) of the First Step Act[3] and 18 U.S.C. § 3582(c)(1)(B),[4] unlike the compassionate release motion here brought under 18 U.S.C. § 3582(c)(1)(A), *see United States v. Concepcion*, No. CR 07-10197-WGY, 2019 WL 4804780, at *3 (D. Mass. Oct. 1, 2019), *aff'd*, 991 F.3d 279 (1st Cir. 2021), *rev'd and remanded*, 597 U.S. 481 (2022) ("This Court understands section 3582(c)(1)(B) of title 18 of the United States Code to provide the basis for relief pursuant to Section 404."),

---

[3] "A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed."  First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222; *see also id.* § 404(a) (defining "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010").

[4] "[T]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  18 U.S.C. § 3582(c)(1)(B).

*Concepcion*'s reasoning applies to Section 3582(c)(1)(A) motions as well.

*Concepcion* involved a defendant who pled guilty in 2007 to one count of distributing crack cocaine and was sentenced to 19 years in prison. 597 U.S. at 487. The defendant qualified for and received a "career offender" enhancement at his original sentencing. *Id.* In 2019, after the First Step Act was enacted, the defendant moved for a reduced sentence raising two main arguments: First, he would no longer be considered a career offender under the Guidelines in effect at the time he filed the motion "because one of his prior convictions had been vacated and his remaining convictions would no longer be considered crimes of violence that trigger the enhancement." *Id.* at 489. And second, the defendant pointed to his post-sentencing rehabilitation. *Id.* The district court denied his motion and the court of appeals affirmed. *Id.* at 489–90.

The Supreme Court reversed and held that district courts could "consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. The Court reasoned that sentencing courts have historically had "broad discretion to consider all relevant information at an initial sentencing" and that such discretion "also carries forward to later proceedings that may modify an original sentence." *Id.* at 491. "The only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution," *id.* at 494, and "[n]othing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion," *id.* at 495. In fact, *Concepcion* held that district courts are "require[d]" to consider a defendant's sentencing disparity arguments so long as they are "nonfrivolous." *Id.* at 502 ("The First Step Act does not require a district court to be persuaded by the nonfrivolous arguments raised by the parties before it, but it does require the court to consider them."); *see also United States v. Ortiz*, No. 17CR2283-MMA-1, 2023 WL 2229262, at *3 (S.D. Cal. Feb. 24, 2023) ("The failure to consider all arguments that are not congressionally barred from consideration amounts to an abuse of discretion.").

18-cr-4687-DMS-1

Relying on *Concepcion*, the Ninth Circuit has held that sentencing disparities caused by nonretroactive changes in sentencing laws may constitute extraordinary and compelling reasons, at least in combination with other factors, and that "a district court's discretion in sentence modifications is limited only by an express statement from Congress." *See Chen*, 48 F.4th at 1096 n.3, 1100.[5]  More recently, the Ninth Circuit held in *United States v. Roper* that *Concepcion*'s reasoning applies to intervening decisional law as well.  72 F.4th 1097, 1101 (9th Cir. 2023) ("The logic of [*Chen*'s] holding, which rested on *Concepcion*, applies with full force when the relevant change in sentencing law is decisional.").

*Roper* involved a defendant who pled guilty in 2013 to possession of cocaine with intent to distribute as well as possession of a firearm in furtherance of a drug trafficking offense.  *Id.* at 1099.  The district court applied a career-offender enhancement to the defendant's drug offense sentence because the Sentencing Guidelines recommend applying such an enhancement if, among other reasons, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  The defendant had four qualifying state felony convictions.  *Roper*, 72 F.4th at 1099–1100.  He was sentenced to 204 months in custody.  *Id.* at 1100.  The Guidelines define a "[p]rior felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year."  U.S.S.G. § 4B1.2, cmt. 1.  Over the next decade, intervening case law disqualified three of the defendant's prior convictions as predicates for the career-offender enhancement.  *Roper*,

---

[5] The circuits are split on this issue as well.  The First, Fourth, and Tenth Circuits are in accord with the Ninth Circuit.  *See United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020).  The Third, Sixth, Seventh, Eighth, and District of Columbia Circuits have held that sentencing disparities created by non-retroactive sentencing statutes "may neither support nor contribute to a finding that extraordinary and compelling reasons warrant compassionate release."  *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022); *see United States v. McCall*, 56 F.4th 1048, 1066 (6th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 2506 (2023) (same); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) (same); *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021) (same); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (same).

18-cr-4687-DMS-1

72 F.4th at 1100.  As a result, the defendant no longer qualified for a career-offender enhancement.

In 2021, the defendant moved for a sentence reduction arguing in part that the disparity between his sentence and the sentence that similarly situated defendants would receive at the time of his motion was an extraordinary and compelling reason.  *Id*.  The district court denied the motion reasoning that it was "categorically prohibited from considering changes to sentencing law in determining whether extraordinary and compelling reasons warrant a reduction."  *Id.* (internal quotes omitted).  The Ninth Circuit reversed and held that the district court could consider changes in decisional law when evaluating whether a defendant has demonstrated extraordinary and compelling reasons. *Id.* at 1102.  Relying on *Concepcion*'s "animating principle"—the "'venerable tradition of discretion' in sentencing and sentence-modification proceedings," *id.* (quoting *Concepcion*, 597 U.S. at 495)—*Roper* held: "Because Congress has not adopted a categorical bar to considering decisional law, we again 'decline to create one now.'" *Id.* (quoting *Chen*, 48 F.4th at 1099).  This conclusively forecloses the United States' argument here.  Under the foregoing precedent, a sentencing disparity caused by intervening decisional law may constitute an extraordinary and compelling reason.  *Id.*  When a defendant raises such an argument, the district court is "require[d]" to consider it so long as it is nonfrivolous.  *Concepcion*, 597 U.S. at 502.

For similar reasons, the Court disagrees that the Defendant's post-*Lopez* sentencing disparity would be more appropriately raised in a motion brought under 18 U.S.C. § 2255 rather than a compassionate release motion.  Section 2255 allows a prisoner in custody "to bring a motion 'to vacate, set aside or correct the sentence' upon the ground that the 'sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . .'" *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999) (en banc) (quoting 28 U.S.C. § 2255).  A motion for sentence reduction, on the other hand, "allows defendants to seek modifications even if their sentences were not imposed in violation of the Constitution or federal law."

18-cr-4687-DMS-1

*Chen*, 48 F.4th at 1101.  As explained, Defendant does not challenge the legality of her sentence or "seek 'to correct sentencing errors.'"  *Roper*, 72 F.4th at 1102 (quoting *United States v. Jenkins*, 50 F.4th 1185, 1200 (D.C. Cir. 2022)).  For purposes of the present motion, Defendant accepts (and the Court assumes) that the original sentence was lawfully imposed.

Rather, Defendant "seeks to invoke the sentencing judge's discretion" to reduce her sentence, presenting "an amalgamation of circumstances—including legal changes creating a sentencing disparity among similarly situated defendants" that she claims are extraordinary and compelling.  *Id.*  Defendant argues that the stark sentencing disparity resulting from the Ninth Circuit's 2021 decision in *Lopez* has made her pre-*Lopez* sentence no longer equitable because it is significantly longer than the sentence a similarly situated defendant would receive today.  This post-*Lopez* sentencing disparity persists regardless of whether this Court erred in finding Defendant ineligible for safety-valve relief at her original sentencing, and regardless of how the Supreme Court in *Pulsifer* construes the safety-valve statute.  Defendant has properly raised her post-*Lopez* sentencing disparity argument in her compassionate release motion because the argument does not challenge the legality of her sentence.  Further, "because 'the court's disposition of a compassionate release motion is discretionary, not mandatory,' . . . granting such a motion does not imply that the original sentence was unlawful."  *Roper*, 72 F.4th at 1103 (quoting *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022)).

Lastly, courts across the Ninth Circuit, including this Court, have found post-*Lopez* sentencing disparities to constitute extraordinary and compelling reasons warranting sentence reduction.  *See, e.g.*, *United States v. Pinal-Maldonado*, No. 17CR3431-MMA-2, 2023 WL 6931783, at *3 (S.D. Cal. Oct. 19, 2023); *United States v. Torres*, No. 17-CR-3556-DMS (S.D. Cal. June 12, 2023) (order granting motion to reduce sentence), ECF No. 73; *United States v. Winchester*, No. CR 17-00743 SOM, 2023 WL 2042168, at *5 (D. Haw. Feb. 16, 2023); *United States v. Vascone*s, No. 18CR5176-CAB, 2022 WL 1004236, at *2 (S.D. Cal. Apr. 4, 2022); *United States v. Wright*, No. 19-CR-4286-GPC, 2022 WL

673265, at *4 (S.D. Cal. Mar. 7, 2022); *United States v. Adame*, No. 1:18-CR-00391-BLW, 2022 WL 2167893, at *8 (D. Idaho Jan. 4, 2022); *see also United States v. Bailey*, No. 5:19-CR-00043-KDB-DCK, 2023 WL 6883649, at *1–2 (W.D.N.C. Oct. 18, 2023) (finding extraordinary and compelling reasons warranting reduction of defendant's 120-month mandatory minimum sentence in part because defendant would be eligible for safety-valve relief if sentenced at the time he filed his motion following a Fourth Circuit decision interpreting the safety-valve statute in accord with *Lopez*).  Accordingly, the Court elects to consider post-*Lopez* sentencing disparities in its analysis of extraordinary and compelling reasons.

### ii.  Analysis

Defendant has demonstrated a stark post-*Lopez* sentencing disparity which, in combination with other factors discussed below, supports a finding of extraordinary and compelling reasons warranting sentence reduction.  "[T]o determine whether there is a sentencing disparity here, the Court compares Defendant to similarly situated defendants sentenced after . . . *Lopez*." *Ortiz*, 2023 WL 2229262, at *5.  It is undisputed that Defendant would qualify for safety-valve relief if sentenced today because she lacks both (A) "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense," 18 U.S.C. § 3553(f)(1)(A), and (C) "a prior 2-point violent offense," § 3553(f)(1)(C).  *See Lopez*, 998 F.3d at 437 (holding defendant safety-valve eligible unless she has all of the following: (A) more than 4 criminal-history points excluding 1-point offenses, (B) a prior 3-point offense, and (C) a prior 2-point violent offense).  The 10-year mandatory minimum would not apply, and the Court would be free to consider all possible variances available under the Sentencing Guidelines and 18 U.S.C. § 3553(a).

To start, the Court computes what the Defendant's guideline range would be today. The base offense level would be 38, recast to 34 accounting for Defendant's minor role. *See* U.S.S.G. § 2D1.1(a)(5)(iii).  Defendant would then receive a -2 adjustment for minor role, *see id.* § 3B1.2(b), a -3 adjustment for acceptance of responsibility on the Government's motion, *see id.* § 3E1.1(a)–(b), and a -4 fast track departure for early plea

19

and recognition of wrongdoing, *see id.* § 3B1.2(b), bringing her adjusted offense level to 25. This is all consistent with her original sentence up to here. But if she were sentenced today, she would also receive a -2 adjustment for safety-valve eligibility, bringing her adjusted offense level to 23. *See* U.S.S.G. § 2D1.1(b)(18). In addition, her criminal history score today would be 5, rather than 7, because after the recent amendments effective November 1, 2023, she would not receive a 2-point increase for having committed the instant offense while under a criminal justice sentence. *See* U.S.S.G. § 4A1.1(e). This brings Defendant to criminal history category III. The resulting guideline range would be a custodial sentence of 57 to 71 months.[6] Defendant received a sentence of 120 months—about twice as long as the sentence she would get if sentenced today considering the guideline range alone without any other variance. The Court finds that this stark sentencing disparity, together with the other factors explained below, constitute extraordinary and compelling reasons warranting a sentence reduction.

Lastly, the Court concludes that granting a sentence reduction based in part on post-*Lopez* sentencing disparities is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement, Section 1B1.13 of the Sentencing Guidelines, allows a court to conclude that "any . . . circumstance or combination of circumstances that, when considered by themselves or together . . . are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b); *see supra* n.1. The Court finds that the stark sentencing disparity supports a finding of extraordinary and compelling reasons and is "similar in gravity" to Paragraphs (1)–(4) listed in U.S.S.G. § 1B1.13(b)(1)–(4).

The Government argues that granting a sentence reduction based on post-*Lopez*

---

[6] The Court takes judicial notice of United States Sentencing Commission statistics showing that in Fiscal Year 2022, for defendants sentenced in the Southern District of California under primary guideline § 2D1.1 with criminal history category III, the average custodial sentence was 43 months, and the median sentence was 37 months. For defendants with criminal history category IV, the average sentence was 45 months, and the median sentence was 40 months. *See* United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard.

sentencing disparities would be inconsistent with the now-applicable policy statement, Section 1B1.13, because the Guideline now states that "a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." (Opp'n at 11 n.5, quoting U.S.S.G. § 1B1.13(c).) The Government notes that although there is a carve-out for defendants with an "unusually long sentence," the exception requires that the defendant have served "at least 10 years of the term of imprisonment." (*Id.*, quoting U.S.S.G. § 1B1.13(b)(6).) However, the Government fails to address whether *Lopez* amounts to "a change in the law" as opposed to a clarification.

The Court is not persuaded that *Lopez* is "a change in the law." Before *Lopez*, the interpretation of the safety-valve statute, 18 U.S.C. § 3553(f), was unsettled among district courts. Some courts interpreted the statute in line with the construction in *Lopez*, *see Lopez*, 998 F.3d at 434 (Lorenz, J., concluding "and" in Section 3553(f)(1) is ambiguous and "invok[ing] the rule of lenity to reach a conjunctive interpretation"), while other district courts, including this Court, interpreted it differently. Accordingly, *Lopez* simply clarified an unsettled question of statutory interpretation among the district courts. Because *Lopez* was not a change in law, the Court finds that Paragraph 6, U.S.S.G. § 1B1.13(b)(6), is inapplicable here.

### b. Rehabilitation

Defendant's significant rehabilitation in prison further supports a finding of extraordinary and compelling reasons. Although "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentencing reduction, 28 U.S.C. § 994(t), a court may conclude that rehabilitation alongside other factors supports a finding of extraordinary and compelling reasons. *Ortiz*, 2023 WL 2229262, at *5 ("[T]he fact that Congress used the modifier 'alone' signals that [rehabilitation] may be relevant and duly considered among other factors.").

At her original sentencing, the Court noted that Defendant's criminal conduct was likely connected to her opioid addiction and mental health challenges. (*See* Tr. of

21

Sentencing Hr'g, ECF No. 73-1, at 12.)  Defendant has stayed sober since sentencing, and on September 19, 2019, her addiction was diagnosed to be in remission.  Commendably, Defendant has made great efforts during her time in custody to further her education and gain tools to maintain sobriety after release.  She earned her GED.  (Ex. C, ECF No. 73-1, at 17.)  She completed FCI Waseca's Drug Education Program and Nonresidential Drug Treatment Program.  (Ex. C–D, ECF No. 73-1, at 16–21.)  She completed courses in a variety of subjects including financial responsibility and effective communication for supervisors, and has signed up to take several more courses.  (Def.'s Mot. at 11; Ex. D, ECF No. 73-1, at 21.)  She secured a fulltime UNICOR apprenticeship working as a seamstress.  (Ex. C–D, G, ECF No. 73-1, at 16–21, 28.)  She has never been disciplined while in federal custody.  (Ex. F, ECF No. 73-1, at 26.)  The Bureau of Prisons has found her security classification and violence level to be "low."  (Ex. B, D, ECF No. 73-1, at 15, 21.)  Defendant has clearly put herself on a productive path forward.

The Court concludes that granting a sentence reduction based in part on Defendant's significant rehabilitation is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Paragraph 5 of the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may conclude that "any . . . circumstance or combination of circumstances that, when considered by themselves or together . . . are similar in gravity to those described in paragraphs (1) through (4)."  U.S.S.G. § 1B1.13(b); *see supra* n.1.  Defendant's post-*Lopez* sentencing disparity and post-offense rehabilitation support a finding of extraordinary and compelling reasons under the Guidelines.  The Court finds these factors together to be "similar in gravity" to Paragraphs (1)–(4) enumerated in U.S.S.G. § 1B1.13(b)(1)–(4).

### c.  COVID-19 and Other Arguments

Defendant makes several additional arguments in her motion, including "harsh conditions" of confinement during the COVID-19 pandemic, (Def.'s Mot. at 26–28), distant placement at FCI Waseca in Minnesota far from family in Washington State, (*id.* at 28–29), and the neglected state of the FCI Waseca facility, including its worn

infrastructure, staff shortages, and limited healthcare and rehabilitation programming, (*id.* at 29–36). Defendant also argues the healthcare she received at FCI SeaTac prior to being transferred to FCI Waseca was inadequate and led to health complications. (*Id.* at 36–39.) Because the Court concludes that the post-*Lopez* sentencing disparity combined with Defendant's significant rehabilitation support a finding of extraordinary and compelling reasons, the Court need not address these arguments.

### 3. Section 3553(a) Factors

In determining whether to grant a sentence reduction, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The Court did not analyze the Section 3553(a) factors at Defendant's original sentencing because the Court found Defendant safety-valve ineligible and imposed the mandatory minimum sentence. However, the Court suggested that but for the mandatory minimum, Defendant "would be . . . in a guideline range of 84 to 105 months, and [would] be [a] good candidate for a variance from that to a lower sentence, something below the low end of 84 months." (Tr. of Sentencing Hr'g, ECF No. 73-1, at 9.)

Section 3553(a) requires the district court to impose a sentence that is "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The Court also must consider, among other factors, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (6). When modifying the original sentence, a court must also consider post-sentencing rehabilitation. *Pepper v. United States*, 562 U.S. 476, 490 (2011).

The Section 3553(a) factors weigh in favor of a sentence reduction. As of the date

23

1   of this Order, Defendant has served approximately 62 months in custody without factoring

2   good time credits.[7]   The Court concludes that a sentence of time served at 62 months is

3   "sufficient, but not greater than necessary" to satisfy the Section 3553(a) factors.  18 U.S.C.

4   § 3553(a)(2).   The nature and circumstances of this case are relatively unremarkable.

5   Defendant and her co-defendant were stopped in their car at the border.   CBP agents

6   conducted a canine search and found 46 packages of contraband concealed within the car

7   in which they entered the United States from Mexico.   CBP agents arrested Defendant

8   without incident.   The Parties jointly recommended, and the Court granted, a minor role

9   adjustment.   The Court recognized that Defendant's opioid addiction contributed to

10  Defendant's conduct.   Defendant's criminal history stems entirely from her longstanding

11  addiction and involves no crimes of violence.   Given these circumstances, the court finds

12  that a sentence of time served at 62 months adequately reflects the "seriousness of the

13  seriousness of the offense," "promote[s] respect for law," "provide[s] just punishment for

14  the offense," and "afford[s] adequate deterrence to criminal conduct."  *Id.* § 3553(a)(2)(A)–

15  (B).

16       The Court finds that such a sentence also adequately "protect[s] the public from

17  further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).   The Government argues that

18  the Section 3553(a) factors weigh against a sentence reduction because, given Defendant's

19  criminal history, the sentence as currently imposed is necessary to deter Defendant's future

20  criminal conduct.  (Opp'n at 13.)   The Court disagrees.   Defendant's criminal history

21  includes three non-violent felony convictions for drug and vehicle-related offenses prior to

22  the instant offense.   The longest custodial sentence Defendant received, prior to the current

23  sentence, was a state-imposed sentence of 23 months for a probation violation for which

24

25  [7] With good time credits, Defendant has served at this time a custodial sentence of approximately 72
26  months.  *See* 18 U.S.C. § 3624(b)(1) ("[A] prisoner who is serving a term of imprisonment of more than
    1 year" other than a life sentence "may receive credit toward the service of the . . . sentence of up to 54
27  days for each year of the . . . sentence imposed by the court" so long as "the prisoner has displayed
    exemplary compliance with institutional disciplinary regulations.").  Given the absence of disciplinary
28  actions during her time in custody, Defendant would likely qualify for good time credits.

she served 13 actual months.  (*See* Def.'s Mot. at 10.)  By contrast, Defendant has already served 62 months of her current sentence—almost five times as long.  That is sufficient deterrence.   In addition, Defendant has made great strides in addressing her opioid addiction, which is at the root of her prior criminal conduct.  Defendant has extensive family support and a young daughter waiting for her at home, and she will benefit from the structure and guidance of supervised release.  Defendant has been imprisoned for more than five years, and that is sufficient but not greater than necessary to meet the Section 3553(a) factors under the circumstances.

## V.    CONCLUSION AND ORDER

For the foregoing reasons, the Court **INDICATES** that if the Ninth Circuit remands to this Court for the purpose of considering Defendant's motion, the Court will **GRANT** Defendant's motion to reduce sentence and **MODIFY AND REDUCE** the length of Defendant's custodial sentence to time served as of the date this Court resumes jurisdiction to grant the motion.  All other terms of the original judgment against Defendant, including the term of supervised release, will remain unchanged.  (*See* Judgment, ECF No. 56.)

This Order will remain an indicative ruling pending further order of this Court.  *See* Fed. R. Crim. P. 37(a)(3).  Defendant must "promptly notify" the Ninth Circuit Clerk of this indicative ruling.  *See* Fed. R. App. P. 12.1(a).  Defendant may move to effect this indicative ruling following the Ninth Circuit's remand to this Court.  *See* Fed. R. Crim. P. 37(c); Fed. R. App. P. 12.1(b).

**IT IS SO ORDERED.**

Date:  December 19, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

25

18-cr-4687-DMS-1